## CHARLES STOKES v. THE STATE.

No. 2023. Decided October 18, 1899.

**Accomplice to Murder—Evidence Sufficient.**

See opinion for facts summarized which are held to fully justify a verdict and judgment of conviction against appellant as an accomplice to murder with punishment assessed at a life term in the penitentiary.

APPEAL from the District Court of De Witt. Tried below before Hon. JAMES C. WILSON.

Appeal from a conviction of accomplice to murder; penalty, imprisonment in the penitentiary for life.

The indictment contained three counts, the first charging appellant with the murder of Lucretia Blackwell on the 12th day of September, 1896, by shooting her with a pistol and then striking her with a stick and then drowning her. The second charged one Orrie Kent with the murder in the same manner and by the same means, and charged

appellant as an accomplice to said murder by said Kent. The third charged that the murder was committed in the same manner and by the same means by some person to the grand jurors unknown, and charged appellant as an accomplice to said murder by said person unknown to the grand jurors.

Appellant was found guilty upon the second count, which charged him as an accomplice to the murder; that is, that Kent was the principal who actually committed the murder alone, the appellant not being present at the time and place of its commission, but that he had instigated, advised, encouraged, and furnished Kent with the means for its commission.

The following facts were agreed to as uncontraverted by any evidence on the trial: Lucretia Blackwell, a negro woman about 18 or 20 years of age, had, at the time of her death, on the 12th day of September, 1896, been confined in the county jail of De Witt County, under a conviction of lunacy for a year; that while she was not a raving maniac, still, for her own protection she was thus confined; that previous to her confinement in jail she had been cared for by the county at the home of her relatives, but this management proving unsatisfactory she was placed in jail, where she remained for about one year, up to the time of her death; that deceased was confined alone in a room up stairs in the jail; that during her confinement there, A. W. Stokes, the father of the defendant, was employed by the sheriff, T. M. Stell, as jailer, and that the defendant slept at the jail in the room down stairs in which Oscar McAllister also slept; that defendant's grandmother and her husband, G. W. Moore, also occupied a room in the lower story of the jail; that the key to the door of the room in which the girl Lucretia Blackwell was confined was kept hanging over the mantelpiece in the room in which the defendant slept; that the defendant at all times had access to the keys of the jail and attended largely to the duties of jailer; that he had lived at the jail for several years; that about the 1st of July, 1896, it was discovered by the woman who washed and cared for Lucretia Blackwell, that she (Lucretia Blackwell) was in the family way, which fact she immediately reported to the sheriff and county judge; that upon examination by a physician she was found to be about three or four months advanced in pregnancy; that the sheriff immediately began an investigation to ascertain who was the author of her condition; that during this investigation defendant came to the sheriff and told him (the sheriff) that he seemed to suspect him (defendant) as being the guilty party; that the sheriff told him (defendant) that he made no charges yet and had not said defendant was the party, but was going to find the man who did it, as the matter reflected on his management of the jail, and when the child came it would show whether a white man was the father of it or not; that the defendant denied having had carnal intercourse with the girl; that arrangements were made for the county judge to have the girl taken out and cared for until after her confinement, and the

time fixed for the party to come for the girl; that two days prior to the time that she was to have been taken from the jail, on the morning of the 12th day of September, 1896, the boy who carried the breakfast to the prisoners discovered that the girl was missing from her room and the door locked as usual, which fact he reported to the sheriff, but that he first reported the matter to defendant, who was then down stairs in the jail, and he came up stairs and apparently made search for the girl. That search was made for the girl but nothing could be found of her for two or three days; that then a report was brought to the sheriff that a dead body was found lying in the river about three miles from the town of Cuero; that upon hearing this the sheriff arrested the defendant, placed him in jail, and went to inspect the body; that the body was found to be that of Lucretia Blackwell, the deceased, and was considerably decomposed; two bullet wounds were found in the body, and also wounds on top of the head, apparently made by striking the deceased with some hard instrument; that the child had been expelled from the body; one of the bullet wounds was in the stomach. Dr. Lackey testified that the death would have resulted either from this wound or from the blow on the head. That buggy tracks were found leading from the public road to the river at a point where there had been a crossing a few hundred yards above the place where the body of the deceased was found floating. That the defendant, in a conversation with the sheriff, T. M. Stell, prior to his arrest, told the sheriff, in accounting for his whereabouts on the night of the murder, that he had been with Sam Guess up to about 9 o'clock, and that he left said Guess and went to the jail and went to bed, remaining there all the rest of the night. That the place where the body was found and where the girl was killed are in De Witt County, Texas.

Orrie Kent, who was also implicated and charged in one of the counts in the indictment with being a principal, testified on the trial of this case for the State. He swore that defendant proposed to him that he would assist him (defendant) in making away with the deceased, and furnished him with money to get a buggy from the livery stable with which to carry the deceased off from the jail. That defendant got the deceased out of the jail and about 9 o'clock at night they all got into the buggy and started off towards the river; that after reaching a point close to the river bank defendant got deceased to get out of the buggy in accordance with their preconceived plan, and in a struggle which ensued defendant shot deceased twice with his pistol; and after deceased was shot and he had thrown her upon the ground, where they were struggling, defendant made him (Kent) strike deceased in the head with a stick of wood, after which defendant carried the body of deceased to the river and threw it in. This is in substance the important part of his testimony.

Defendant proved by several witnesses his whereabouts between the hours of 8 and 11 o'clock that night, going to show that he could not have been with Kent during that time as Kent had testified, and could

not have been at the place where Kent testified that the homicide occurred, at the time it occurred.

No further statement of the case is necessary.

*R. A. Pleasants* and *O. L. Crouch,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of being an accomplice to a murder, and his punishment assessed at confinement in the penitentiary for life.

The contention here is that the conviction should have been under the first count of the indictment, charging him as a principal; the evidence not supporting the verdict finding him guilty as such accomplice, under the other counts. If the testimony of the accomplice is alone to be believed, the contention has considerable force. If much of the remainder of the testimony, taken in connection with that of the accomplice, is to be credited, the jury were justified in finding the verdict they did. While it is true that Kent, the accomplice witness, makes the appellant the principal actor in the homicide, much of the testimony for the State, and substantially all of that for the defendant, shows that he was not present at the time and place of the killing, but was in the town of Cuero, some three or four miles distant from the scene of the murder. The jury were warranted in finding that the homicide was committed about 10 o'clock at night. Kent, the accomplice, swears that he and appellant took deceased, a lunatic negro girl, from the county jail, and conveyed her in a buggy to the bank of the river, and there defendant, by shooting, and by beating her on the head with a pistol, and by drowning, murdered her. The motive on the part of appellant for the homicide, as shown by all the testimony, and his own confessions as well, was to avoid the consequences of his carnal intercourse with said negro girl, who had become pregnant. McAllister, appellant's brother-in-law, who slept in the room in the jail with appellant, testified that at 10 o'clock defendant was in said room, and remained there the balance of the night. There is other testimony showing that he was in the jail room and about the jail about that hour. In addition to this, the evidence of other witnesses show that he was about the streets of Cuero from 8 to 9 o'clock, and that he was at the residence of his mother at a time so near 10 o'clock that it could not have been possible for him to have been at the point of the homicide at the time the accomplice testified it occurred. In other words, both the evidence for the State and the defendant tends very strongly to prove his absence from the point of, and at the time of, the killing. Under this state of case, we believe the jury were fully justified in finding this verdict. There is no question, under this testimony, that appellant advised and prepared the way for the murder of the girl by Kent; furnishing the means, etc. The testimony is rather weak tending to show his presence at the

homicide, but is cogent showing his absence. Under this state of case the jury were fully warranted in finding the verdict they did. There are no bills of exception in the record, and the only error assigned is, the one discussed. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]